UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANNA L. PEAY, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   1:04-cv-1038-SEB-JPG |
|   vs. | ) |
| | ) |
| BRINK'S INCORPORATED, | ) |
| | ) |
|     Defendant. | ) |

**ENTRY ON PLAINTIFF'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Anna Peay, is a former employee of the Defendant, Brink's Incorporated ("Brinks"). She was terminated from her employment as an Account Executive on October 20, 2003. She has brought suit claiming that Brinks discriminated against her based on her age and gender and also failed to pay her commissions she was due at the time of her termination. It is the latter claim that is the subject of her first motion for partial summary judgment, which we address in this entry.

Peay claims that as a matter of law she is entitled to "roughly $5,029.01" in commissions. She does not ask for a ruling as to the exact amount of the commissions she is owed, but believes she is entitled to a determination that she is owed commissions pursuant to the Brink's 2003 U.S. Account Executive Incentive Plan ("Incentive Plan"), plus liquidated damages and the attorney fees and costs necessary to prevail on her claim for wages under IND. CODE §§ 22-2-9-2 and 22-2-5-2. According to Peay, she should receive a summary judgment on liability, entitling her to damages of " a specified amount to be determined pending discovery." Brinks argues that Peay

has not met the threshold of proof required to succeed on her claim and that, in fact, Brinks has paid her all that she is owed under the Incentive Plan. We find Peay's motion to be premature at best and that summary judgment is not warranted.

Summary judgment is only to be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. To determine whether any genuine factual issue exists, the Court examines the pleadings and the proof as presented in depositions, answers to interrogatories, admissions, and affidavits made a part of the record. *First Bank & Trust v. Firstar Information Services, Corp.*, 276 F.3d 317 (7th Cir.2001). The Court also draws all reasonable inferences from undisputed facts in favor of the non-moving party and views the disputed evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Here, Peay offers nothing other than a copy of the Incentive Plan and her own self-serving affidavit testifying that she is owed commissions for securing business from four specific clients. Brinks meets that affidavit with an affidavit from one of their managers indicating that Peay has been paid all that she is owed, but more importantly points to critical language in the Incentive Plan and Peay's deposition testimony indicating her understanding of the import of that language.

The portion of the Incentive Plan that is at issue is the New Account Incentive, which rewards account executives who establish new accounts that generate profitable business. In pertinent part, the Incentive Plan provides for a two, three or four percent commission, on annualized revenues, depending on the type of business contracted for, with payment "made monthly upon submission of a signed agreement or contract for services, together with invoices for two consecutive months." Peay testified that she understood that the contract and two months

of invoices were a prerequisite to the account qualifying for a new account commission. Brinks offers the testimony of its manager in charge of the Incentive Plan who states that Peay did not submit an agreement or two months invoices for any of the accounts for which she says she is still owed commissions. It further argues that when it received Peay's post termination listing of account commissions she believed she was owed, it went through each of the accounts listed and determined and paid the appropriate commission pursuant to the Incentive Plan. Peay argues that certain documents which would help her prove her case were left in her desk or are otherwise in the control of Brinks and have yet to be produced, though requested, in discovery. If that is the case, then we have a discovery issue that may need to be addressed, but we certainly do not have a timely or properly supported motion for summary judgment.

Under Indiana law, an account representative employed on a commission basis is entitled to receive commissions earned while employed even after her termination, unless there is a contrary written agreement with respect to a "different compensation scheme." *Sample v. Kinser Ins. Agency, Inc.*, 700 N.E.2d 802, 804 (Ind. App. 1998). Here, there is no argument between the parties with respect to the applicability of the written Incentive Plan, so its provisions must guide eligibility for commissions. Brinks has offered an explanation for why its post termination payment to Peay of $15,987.50 was in complete satisfaction of amounts due under the agreement and why the four accounts Peay mentions did not qualify for a commission. However, we need go no further than the threshold fact that certain documents were required to establish eligibility for a new account incentive and while Peay intimates that some of those documents might have been in her desk, she admits that she has yet to uncover whether the specific required documents

exist.[1]  That being the case, we need not explore deeper.  It is clear that there remains a question of fact preventing our issuance of a summary judgment on the issue of Plaintiff's wage claim.

Accordingly, Plaintiff's Motion For Partial Summary Judgment On Her Wage Claim is DENIED.

IT IS SO ORDERED.

10/11/2005

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[1] In fact, Peay never comes out and directly states that she knows that written agreements establishing the new account relationships were actually signed at the time she was terminated or that two months of invoices had been generated.  Rather, she seems to be arguing that the clients clearly signed an agreement at some point and that there would be some inequity in allowing Brinks to benefit from her hard work in establishing the relationship just because a written agreement was not confirmed until after she was terminated.  However, she has testified that the Incentive Plan is the agreed commission program she worked under at Brinks, and it requires a written contract and two months of invoiced business <u>before</u> a commission is earned.

Copies to:

Kimberly G. Baldwin
KING PAGANO & HARRISON
kbaldwin@kph.com

Mary J. Hoeller
mary@attorneyhoeller.com

James E. Kellett
KING PAGANO & HARRISON
jkellett@kph.com

Jacqueline B. Ponder
MCTURNAN & TURNER
jponder@mtlitig.com